**MORRISON AND MORRISON INC., Employer, and Tom Kyte, Alien, Plaintiffs-Appellants,**

v.

**SECRETARY OF LABOR OF the UNITED STATES, Defendant-Appellee.**

No. 79–2289.

United States Court of Appeals, Tenth Circuit.

Argued June 3, 1980.

Decided July 14, 1980.

Russell P. Kramer of Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for plaintiffs-appellants.

Charles D. Raymond, Atty., U. S. Dept. of Labor, Washington, D. C. (Joseph Dolan, U. S. Atty., and William C. Danks, Asst. U. S. Atty., Denver, Colo., on brief), for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a decision of the district court affirming the Secretary of Labor's denial of an alien employment certification under 8 U.S.C. § 1182(a)(14) of the Immigration and Nationality Act. The only question on appeal is whether the Secretary erred in interpreting his own regulations.

Morrison and Morrison, Inc. sought to employ Tom Kyte, a resident of England, to work on a commission basis selling real estate and other business opportunities to foreign investors. The employment was to be in the Denver area and required knowledge of prospective purchasers in the United Kingdom. An application was made to the Manpower Division of the U.S. Department of Labor for employment certification necessary to obtain a visa for Kyte. As ultimately established by the employer, the rate of pay was to be $600 per month plus commissions, and the employer advertised the job opportunity on three separate days in the *Rocky Mountain News* under "F" for foreign investment liaison.

During the processing of the application, there were various conferences, administrative procedures and one previous appeal to the district court, all of which raised and resolved questions not involved in this appeal. Ultimately, however, the Secretary refused to issue the certification after determining that the employer had not complied with 20 C.F.R. § 656.21(b) (1979) in the following respects: (1) the guaranteed wage offered had to be the prevailing wage paid to similarly situated employees in that market, found to be $1200 per month; and (2) the employer had to advertise the position in a professional publication at a place where potential employees would most likely be found, here the eastern edition of the *Wall Street Journal.* After exhausting administrative remedies, plaintiffs presented the matter to the district court, which ruled that the Secretary of Labor's requirements were justified under the regulations. This appeal was then perfected.

I

The pertinent part of the regulation dealing with the required wage offer provides as follows:

(b) Except for labor certification applications involving Schedule A occupations, the employer shall submit, as part of every labor certification application, on the *Application for Alien Employment Certification* form, as appropriate, or in attachments, documentation which shows clearly that:

(1) The employer has been recruiting at the prevailing wage, as described at § 656.40 of this Part, and at prevailing working conditions, and has reason to think it will continue to be unsuccessful in its recruiting of U.S. workers through the public employment system and/or through other labor referral and recruitment sources normal to the occupation;

. . . . .

(3) The wage offered equals or exceeds the prevailing wage as determined pursuant to § 656.40 of this Part, and that the employer guarantees that, if a labor certification is granted, the wage the employer will pay to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work;

(4) The wage offered is not based on commissions, bonuses or other incentives, unless the employer guarantees a wage paid on a weekly, bi-weekly or monthly basis . . . . .

20 C.F.R. § 656.21(b) (1979).

The employer argues the proper interpretation of this regulation is that the wage required to be guaranteed, when the job is to be compensated upon a commission basis, must be only sufficiently high to keep the alien off welfare in the United States. The employer points out that subsection (b)(4) of the regulation states only that the employer "guarantees a wage," and not that the employer guarantees at least the prevailing wage. It asserts that since Congress has determined excludable aliens include those who "are likely at any time to become public charges," 8 U.S.C. § 1182(a)(15), a guar-

anteed wage sufficient to keep the alien off welfare, which $600 per month arguably would do, satisfies the requirements.

The Secretary interprets this regulation as requiring the guaranteed wage for commission-compensated employment to be the prevailing wage. He views subsection (b)(4) not as an alternative to the other requirements, but as an addition to the requirement that recruitment be at a prevailing wage as set forth in (b)(1) and (3), because all the provisions are in a series followed by semicolons and are clearly intended to be cumulative. Also, 20 C.F.R. § 656.40(a)(2)(i), which sets forth the method of determining the prevailing wage, does not distinguish between a wage based on salary, commission or bonus.[1] The Secretary also points out that the prohibition against paying less than prevailing wages must apply equally to commission-based jobs, because otherwise there would be a loophole in the regulations. Aliens eager to come to the United States would be willing to accept commission-based employment, at which they could not earn the prevailing wage. This would have an adverse effect upon the wages of similarly employed United States workers.

■ The standard for reviewing an administrative agency's interpretation of its own regulations is "plainly erroneous or inconsistent." *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). The Secretary's interpretation here is a reasonable construction of the regulation and therefore must stand.

## II

■ 20 C.F.R. § 656.21(b)(9)(i) (1979), requires the employer to advertise the job opportunity "in such media as newspapers of general circulation, and ethnic and professional publications." Also pertinent to the scope of recruitment is 20 C.F.R. § 656.24(b)(2)(i), (iv) (1979), which declares as follows:

(i) The Certifying Officer, in judging whether a U.S. worker is willing to take the job opportunity, shall look at the documented results of the employer's and the employment service office's recruitment efforts, and shall determine if there are other appropriate sources of workers where the employer should have recruited or might be able to recruit U.S. workers.

. . . . .

(iv) In determining whether a U.S. worker is available at the place of the job opportunity, the Certifying Officer shall consider U.S. workers living or working in the area of intended employment, and may also consider U.S. workers who are willing to move from elsewhere to take the job at their own expense . . . . .

The regulation clearly contemplates advertising in a professional publication, and this is a reasonable requirement here in view of the sophisticated nature of the job. Plaintiffs' principal contention on the advertising requirement is that the employer cannot be required to recruit outside of the geographic area of the job. This argument is derived mainly from the statutory reference to availability of workers "at the place" where the services are to be performed. 8 U.S.C. § 1182(a)(14). Plaintiffs argue section 656.24(b)(2)(iv) allows the certifying officer to consider an outside person only if the officer knows the potential employee is willing to move to the area; it does not impose any outside recruiting duty on the employer.

The Secretary takes the position that a determination of the availability of workers at the place of employment encompasses a consideration of those who are willing to move from elsewhere to take the job, and thus it is within the regulatory requirements to require advertising that might reasonably reach such people.

---

1. This subsection provides,

(i) The average rate of wages, that is, the rate of wages to be determined, to the extent feasible, by adding the wage paid to workers similarly employed in the area of intended employment and dividing the total by the number of such workers. Since it is not always feasible to determine such an average rate of wages with exact precision, the wage set forth in the application shall be considered as meeting the prevailing wage standard if it is within 5 percent of the average rate of wages;

The Secretary's interpretation clearly meets the standard of review set forth above. The employer seeks a foreign investment representative with connections in England, who will move at his own expense to Denver for a guaranteed minimum monthly wage of $1200 (as required by the Secretary). It does not seem unreasonable to require this be advertised once in the eastern edition of the *Wall Street Journal*. If a worker in England is willing to come to this country at his own expense for such a wage, it is not unreasonable to suppose that a qualified American living in New York or elsewhere in the United States might be willing to do the same. The Secretary of Labor does not here require a massive advertising expenditure all over the country. A requirement that does not involve a significant expenditure of money, which is likely to reach the pool of U.S. citizen prospects, is not inconsistent with the law or the regulations promulgated thereunder.

The judgment is affirmed.