Eli B. JONES, Executor of the Estate of Jesse L. Bobo, Deceased, Plaintiff-Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Defendant-Appellee.

No. 84–1947.

United States Court of Appeals, Tenth Circuit.

Nov. 23, 1984.

Hugh D. Rice of Rainey, Ross, Rice & Binns, Oklahoma City, Okl., for plaintiff-appellant.

John E. Green, First Asst. U.S. Atty., Oklahoma City, Okl., and Robert E. Feldman, Federal Deposit Ins. Corp., Washington, D.C. (Douglas H. Jones, Deputy Gen. Counsel, Roger A. Hood, Asst. Gen. Counsel, F. Douglas Birdzell, Counsel, Federal Deposit Ins. Corp., Washington, D.C. and William S. Price, U.S. Atty., Oklahoma City, Okl., with them on brief), for defendant-appellee.

Before SETH, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

The issue presented in this appeal is whether the district court erred in granting Federal Deposit Insurance Corporation's (FDIC) motion for Summary Judgment against the claim of Eli B. Jones, Executor of the Estate of Jesse L. Bobo, Deceased (Estate), for a balance allegedly due on behalf of legatees and devisees of the Estate under the Last Will and Testament in amount of $458,631.50. On appeal, Estate contends that the district court erred in ruling that death benefits derived from insurance proceeds on the life of the decedent paid to Estate and deposited in Penn Square Bank, N.A. of Oklahoma City, Oklahoma (Bank), in total amount of $645,-000.00 were "funds of a decedent" pursuant to FDIC regulation 12 C.F.R. § 330.4,[1] thereby limiting total insurance coverage to $100,000.00. The pertinent undisputed facts follow.

On October 15, 1981, Jesse L. Bobo died testate, a resident of the State of Okla-

---

1. 12 C.F.R. § 330.4 provides:
   "Funds of a decedent held in the name of the decedent or in the name of the executor or administrator of his estate and deposited in one or more deposit accounts shall be insured up to $100,000.00 in the aggregate separately from the individual deposit accounts of the beneficiaries of the estate or of the executor or administrator."

homa, survived by his wife and three minor children. Under Bobo's Last Will and Testament, plaintiff-appellant Eli B. Jones was named Executor of the Estate. After qualifying as Executor, Jones applied for insurance proceeds of term life insurance policies issued on the life of the decedent. These funds were paid to "Eli B. Jones, Executor of the Estate of Jesse L. Bobo, Deceased." In addition to specific bequests, the Will created two testamentary trusts wherein Eli B. Jones was appointed trustee. In other words, Jones, as Executor, was directed to set over and distribute property to Jones, as Trustee, subject to last illness, funeral expenses, debts, taxes and costs of administration.

Following Jones' qualification as Executor of Bobo's Estate, he submitted certified copies of his authority to so serve to the insurance carrier or carriers, and, as Executor, he received and deposited with Bank proceeds in total amount of $673,289.38 payable to "Eli B. Jones, Executor of the Estate of Jesse L. Bobo, Deceased." [2]

On July 5, 1982, the Comptroller of the Currency declared Bank insolvent and FDIC was appointed to serve as Receiver in its corporate capacity. Jones made demand on FDIC, as Receiver, for insurance coverage for the funds on deposit in total sum of $673,289.38. The FDIC paid the Executor $100,000.00 as the insurance payment it determined Estate was entitled to. Subsequently, FDIC paid the Executor a liquidation dividend of $114,657.88. The Executor filed this suit against FDIC to collect the balance claimed due and owing in amount of $458,631.50.

■ The statutory authorization for FDIC is set forth under 12 U.S.C. § 1811, *et seq.* In effect, the FDIC serves as a mutual insurance company created by Congress, supported by assessments levied upon insured banks, to promote stability and soundness in the nation's banking system. 12 U.S.C. §§ 1821(a, c, e), 1823(e); *Gunter v. Hutcheson,* 674 F.2d 862 (11th

Cir.1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *First State Bank v. United States,* 599 F.2d 558 (3rd Cir.1979). In keeping with this goal, FDIC insures bank deposits up to $100,000.00. 12 U.S.C. § 1821(a). As such, one of its principal duties, as Receiver in its corporate capacity (as here), is to pay the depositors of a failed bank. All accounts are "frozen" when the FDIC assumes its obligations as Receiver, and there is complete disruption of the day-to-day banking activities. When the FDIC is appointed Receiver of a failed bank, as here, pursuant to 12 U.S.C. § 1821(c), (e), it acts in two capacities: (1) as a corporate insuror of deposits, and (2) as a corporate receiver. The intent of the statutory and regulatory schemes is that the FDIC move with dispatch in order to maintain the going concern value of a failed bank and to avoid significant disruptions in its banking services.

In *D'Oench, Duhme & Co. v. F.D.I.C.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court squarely held that federal law controls the rights and obligations of the FDIC. 12 U.S.C. § 1813($l$) describes the term "deposit." 12 U.S.C. § 1813(m)(1) provides that the term "insured deposit" means the net amount due any depositor, after deducting offsets, less any part thereof in excess of $100,000.00 as determined by such regulations as the Board of Directors of FDIC may prescribe for the "[p]urpose of clarifying and defining the insurance coverage" and to "[d]efine, with such classifications and exceptions as it may prescribe, terms used in those subsections" and "[t]he extent of the insurance coverage resulting therefrom."

■ The district court, in its Order Sustaining Defendant's Motion for Summary Judgment, succinctly set forth its reasons for holding, contrary to the claims of Estate, that (1) the funds on deposit were "funds of the decedent" held in the name

---

**2.** These deposits were, upon Penn Square Bank's closing, represented by two cashier's checks totaling $666,000.00 and one interest payment check of $7,289.38, totaling $673,-

289.38. 12 U.S.C. § 1813($l$)(4) (1982) declares such checks to be deposits of the payee for FDIC deposit insurance purposes.

of the Executor and entitled only to the aggregate insurance coverage of $100,-000.00, and (2) there existed no clear indication that the FDIC arbitrarily discriminated between funds held in different rights and capacities when the regulation at issue was promulgated:

The FDIC has promulgated deposit insurance coverage regulations found at 12 C.F.R. Part 330 (1983). The regulations pertinent herein are section 330.1(a) and section 330.4.

12 C.F.R. (sic) § 330.1(a) provides:

"(a) *General.* This Part 330 provides for determination by the Corporation of the insured depositors of an insured bank and the amount of their insured deposit accounts. The rules for determining the insurance coverage for deposit accounts maintained by depositors in the same or different rights and capacities in the same insured bank are set forth in the following provisions of this part. Insofar as rules of local law enter into such determinations, the law of the jurisdiction in which the insured bank's principal office is located shall govern."

12 C.F.R. § 330.4 provides:

"Funds of a decedent held in the name of the decedent or in the name of the executor or administrator of his estate and deposited in one or more deposit accounts shall be insured up to $100,000 in the aggregate, separately from the individual deposit accounts of the beneficiaries of the estate or of the executor or administrator."

Plaintiff argues that the insurance proceeds deposited in the Bank were never "funds of a decedent" because under Oklahoma law the interests of heirs, legatees and beneficiaries vest on the decedent's death, subject only to the executor's administrative interest.[3] Plaintiff argues the decedent never possessed a property interest in the insurance proceeds prior to death at all, therefore § 330.4 is inapplicable to the $673,289.38.[4] Plaintiff further argues that because title to the proceeds vested in the four beneficiaries upon Bobo's death, each of their interests is entitled to individual FDIC insurance coverage in the amount of $100,000.00.

Proceeds of a life insurance policy made payable to the estate of the decedent are subject to the payment of the decedent's debts.[5] It is stated in 31 Am.Jur.2d "Executors and Administrators," § 200, p. 111:

"[T]he proceeds of a life insurance policy made payable to a named beneficiary are not assets of the estate of the insured but belong solely to the beneficiary.... But generally, where a policy is payable to the insured or to his executors, administrators, assigns, or 'legal representatives,' without designation of other beneficiaries, it is deemed payable to the estate, and the proceeds constitute general assets of the estate." ·

Here, the funds on deposit were not payable to a named beneficiary but were payable to the estate of decedent, thus constituting general assets of the estate. As general assets of the estate, it appears the funds were "funds of the decedent ... held in the name of the executor ... of his estate" under § 330.4. As such, the funds were entitled in the aggregate to $100,000.00 insurance coverage payable by defendant.

Nor does § 330.4 deprive the legatees of a will of equal protection of the laws guaranteed by the Fifth Amendment. Plaintiff bases this argument on a comparison of the treatment under the FDIC regulations of funds of an estate, funds held in trust, and funds held by an insured bank in a fiduciary capacity. Although funds of an estate are insured up to $100,000 in the aggregate, funds held in trust are insured up to $100,000 for each individual beneficiary's interest,[6] and funds held by an insured bank in a fiduciary capacity are insured up to $100,000 for each trust estate.[7] Plaintiff thus argues the regulatory scheme arbitrarily discriminates between the three similarly situated funds.

12 U.S. § 1813(m)(1) gives to the FDIC the power to promulgate regulations governing the amount of insurance coverage applicable to funds deposited in FDIC-covered banks "maintained in the same capacity and the same right" by depositors. Pursuant to § 1813(m)(1) the FDIC has promulgated the regulations set forth above. This Court is to afford great weight to the construction and interpretation of statutes promulgated by the agency charged with their implementation. *See, e.g., Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 557 [100 S.Ct. 790, 792, 63 L.Ed.2d 22] (1980); and *Griggs v. Duke Power Co.,* 401 U.S. 424 [91 S.Ct. 849, 28 L.Ed.2d 158] (1971).

In the absence of a clear indication that the FDIC arbitrarily discriminated between funds held in different rights and capacities when promulgating the pertinent regulations, this Court cannot conclude the regulations are unconstitutional.

---

[3] 84 Okl.St.Ann. § 175 provides

"Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death."

[4] Plaintiff states, "They were funds which came into existence on decedent's death and were payable to his estate by contract—not by prior property right." Plaintiff's Brief in Opposition of Motion to Dismiss and in Support of Plaintiff's Motion for Summary Judgment, page 3.

[5] *See, e.g.,* 84 Okl.St.Ann. § 306, "The proceeds of insurance as received by the trustee or trustees shall not be subject to debts of the insured nor to transfer or estate tax to any greater extent than if such proceeds were payable to the beneficiary or beneficiaries named in the trust and not to the estate of the insured."

**3.** Estate relies upon *Federal Deposit Ins. Corporation v. Casady,* 106 F.2d 784 (10th Cir.1939) and *Phair v. Federal Deposit Insurance Corporation,* 74 F.Supp. 693 (D.N.J.1947) for authority that state law should be applied to determine the status of the deposits in this case. These opinions did, to be sure, apply state law in determining the status of the deposits for insurance coverage purposes. These decisions cannot control here, however, because they were

(Uniform Testamentary Additions to Trusts Act). See also 84 Okl.St.Ann. § 3.

[6] 12 C.F.R. §§ 330.2(c) and 330.10.

[7] 12 U.S.C. §§ 1817(i) and 1813(p).

R., Vol. I, pp. 105–108.

We agree with the reasoning and conclusion of the district court. Estate contends that 12 C.F.R. § 330.4 does not apply because the funds on deposit were not "funds of a decedent" as covered by the regulation because, under Oklahoma law, "[t]he heirs, legatees and beneficiaries of an estate take title to all estate assets at the time of the death of the decedent subject to the executor's possessory interest in administering the estate." Brief of appellant at 3. Estate thus contends that "[t]hese life insurance proceeds belonged from the moment of death to the beneficiaries under the Last Will and Testament of Jesse L. Bobo, deceased. Each of their respective interests are therefore entitled to coverage to the extent of their interest not in excess of $100,000." [3] The FDIC responds that the FDIC is not required to insure the interests of beneficiaries of an estate, citing to 12 U.S.C. § 1822(c) (1982), and that the "[d]etermination of how executors' accounts are insured is made by federal regulations, and considerations of local law do not enter into play." Brief of Appellee at 4. Thus, argues FDIC, the district court properly looked to and applied 12 C.F.R. § 330.4 (1984) in ruling that "[p]roceeds of a life insurance policy payable to an insured's estate or executor are 'funds of a decedent' with[in] the meaning of section 330.4 .... and are therefore added to all other funds of a decedent in his estate and insured to $100,000 in the aggregate." *Id.* at 4. We agree.

The records of Bank did not reveal that the Executor of Bobo's Estate held the

decided years before the FDIC Board of Directors promulgated the regulations (1967) relating to rights, status, and capacities involved in various deposits held by insured banks. This eliminated the need to rely on state law except in those instances where state law is necessary for the determination. *See* 12 C.F.R. § 330.1(a) (1984). Here, 12 C.F.R. § 330.4 expressly controls.

subject funds in any capacity such as trustee or custodian for more than one beneficiary which would trigger insurance coverage beyond $100,000. In *Gunter v. Hutcheson, supra,* 674 F.2d at 870 the Court pertinently observed: "Because of the time constraints involved, the only method of evaluating potential loss open to FDIC is relying on the *books and records of the failed bank ...*" (emphasis supplied). We agree.

■■■ Section 330.1(b) of the FDIC's regulations, 12 C.F.R. § 330.1(b) (1984), establishes record keeping requirements regarding the rights and capacities in which deposits are owned. Paragraph 1 of § 330.1(b) provides as follows:

(b) Records. (1) The deposit account records of the insured bank shall be conclusive as to the existence of any relationship pursuant to which the funds in the account are deposited and on which a claim for insurance coverage is founded. Examples would be trustee, agent, custodian or executor. No claim for insurance based on such a relationship will be recognized in the absence of such disclosure.

Under the above quoted regulation the status of "trustee, agent, custodian, or executor" is separately categorized. One who makes a deposit as an "executor" is not to be considered as a "trustee," "agent" or "custodian." The bank records, if accurate and complete in reflecting the intention of the depositor conveyed to the bank, are conclusive in the interpretation of the account status. If a depositor challenges the bank records—in this case the two cashier's checks—as to their correctness, there exists a presumption of correctness which may be overcome by proof that the records do not properly and accurately reflect the instructions of the depositor to the bank.

In *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the Supreme Court, after holding that federal, rather than State, law applied in the case, reasoned that a uniform federal rule, rather than the applicable state law in the situs of the controversy, should control

if the federal program to which it applied required nationwide uniformity. In approaching this question, inquiry must be made whether the state law would frustrate the specific objectives of the federal program and whether the federal rule would disrupt commercial relations based on state law. Applying this analysis, we are satisfied that a uniform rule of federal law is necessary. First and foremost, we must recognize the fact that time is of the essence in cases such as this. The FDIC must move expeditiously. This can only be accomplished in meeting its insurance coverage benefits to bank depositors following a bank failure by applying the FDIC regulations, *supra.*

■■■ Deference is due the construction of a statute or a regulation by the administrative agency charged with administering it. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Of great significance in any determination of Congressional intent is the executive implementation of legislation. *Ute Indian Tribe v. State of Utah,* 716 F.2d 1298, 1312 (10th Cir.1983). When an agency is interpreting its own regulation, the Courts have given added deference to the agency's construction and the standard of review for an agency's interpretation of its own regulation is that of plainly erroneous or inconsistent standard. *Hoover & Bracken Energies v. U.S. Dept. of Interior,* 723 F.2d 1488 (10th Cir.1983) U.S.App.Pndg.; *Devon Corp. v. Federal Energy Regulatory Commission,* 662 F.2d 698 (10th Cir.1981); *Morrison and Morrison, Inc. v. Secretary of Labor,* 626 F.2d 771 (10th Cir.1980). We have held that the administrative interpretation of a statute need only be a reasonable one to be accepted, even though there may be another equally reasonable interpretation. *Rocky Mountain Oil and Gas Ass'n v. Watt,* 696 F.2d 734, 745 (10th Cir.1982); *Brennan v. Occupational Safety & Health Commission,* 513 F.2d 553, 554 (10th Cir.1975). And where the interpretation of a statute calls for agency expertise, the agency's construction is to be sustained if it is reasonable. *Blue Cross*

*Association v. Harris,* 664 F.2d 806, 810 (10th Cir.1981).

WE AFFIRM.