**WAUKESHA STATE BANK and Wabank & Co., Petitioners,**

**v.**

**NATIONAL CREDIT UNION ADMINISTRATION BOARD, Respondent.**

**No. 91–1285.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 21, 1992.

Decided June 23, 1992.

Daniel W. Hildebrand, with whom Lynn M. Stathas, Madison, Wis., and Jerris Leonard, Washington, D.C., were on the brief, for petitioners.

Thomas M. Bondy, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Anthony J. Steinmeyer, Washington, D.C., were on the brief, for respondent.

Before RUTH BADER GINSBURG, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Waukesha State Bank and its agent Wabank and Company (collectively "Waukesha" or "the Bank") petition this Court to review a decision of the National Credit Union Administration ("NCUA" or "the Administration") denying separate share insurance coverage on an account total of $295,000 in a failed credit union. The effect of the Administration's decision was to limit Waukesha's recovery to $100,000. Because Waukesha was the sole record owner of the account, and because applicable regulations do not require examination of ownership beyond the records of the holding institution, we conclude that the Administration Board acted properly and deny the petition.

## BACKGROUND

On August 15, 1988, the Bank purchased a $200,000 share certificate in Franklin Community Federal Credit Union.[1] At the Bank's direction, Franklin issued the share certificate in the name "Wabank and Company." On October 3, 1988, the Bank bought another share certificate in Franklin in the amount of $95,000 in the same name.

Despite this no doubt welcome custom, Franklin fell on hard times. Indeed, it became insolvent. Fortunately for its depositors, Franklin was a federal credit union governed by 12 U.S.C. §§ 1751–1795k, which provides, *inter alia*, that "[t]he Board ... shall insure the member accounts of all Federal credit unions." 12 U.S.C. § 1781(a).

Unfortunately for Waukesha the insurance coverage is limited to $100,000 per account holder. More technically, " 'insured account' means the total amount of

the account in the member's name ... less any part thereof which is in excess of $100,000." 12 U.S.C. § 1787(k)(1). *See also* 12 U.S.C. § 1782(h)(3). The total of the holder's assets in the credit union provides the relevant figure: "[I]n determining the amount due to any member, there shall be added together all accounts in the credit union maintained by him for his own benefit either in his own name or in the names of others." 12 U.S.C. § 1787(k)(1).

Obedient to its reading of the face of these statutory provisions, the liquidating agent for the Administration limited Waukesha's recovery to $100,000. Waukesha appealed the liquidating agent's decision, claiming that the Franklin account was in fact three accounts, each for the benefit of a separate entity for whom the Bank was acting as nominee or trustee. Specifically, the Bank asserted that the August 15 certificate represented a $100,000 account held by the nominee for the benefit of Waukesha State Bank Pension Plan and a separate $100,000 account held by the nominee for Waukesha State Bank Profit Sharing Plan; and that the October 3 certificate represented a $95,000 account held by the nominee for George Antonic IRA.

The NCUA found no documentation in the credit union's records that disclosed the nominee status, therefore it declined to recognize the claimed status and denied the appeal. After a vain request by the Bank for reconsideration, the NCUA issued its final determination on March 27, 1989, denying insurance in excess of $100,000. The Bank petitions this Court for review of the Administration's decision pursuant to 12 U.S.C. § 1787(d)(4).

## ANALYSIS

■ We note at the outset that our jurisdictional grant in § 1787(d)(4) expressly directs that "[f]inal determination made by the Administration shall be reviewable in accordance with chapter 7 of Title 5" of the

---

1. Inexplicably, petitioner's brief describes this transaction as the purchase of two $100,000 share certificate accounts, though the record, including the Joint Appendix filed with this Court, reveals a single certificate. We note this fact only marginally, as it is of no controlling importance in our disposition of the petition.

United States Code. As that chapter is the Administrative Procedure Act, we review this determination under the familiar "arbitrary and capricious" standard set forth in 5 U.S.C. § 706(2)(A). Further, as we proceed in the analysis we will examine the agency's interpretation of its own regulation applying the statute entrusted to its administration by Congress. We will uphold that interpretation "unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *see General Carbon Co. v. Occupational Safety & Health Review Comm'n*, 860 F.2d 479, 483 (D.C.Cir. 1988). We note these two deferential standards in passing, and expect not to return to them for any extended examination since the actions of the Administration are quite sustainable under far more rigorous standards of review than these.

The Administration examined the records of the insured credit union. Those records revealed that the entire $295,000 claimed by Waukesha was represented in two certificates both in the name of Wabank and Company. The Administration applied its regulation, which provides:

> (C) *Records.* (1) The account records of the insured credit union shall be conclusive as to the existence of any relationship pursuant to which the funds in the account are deposited and on which a claim for insurance coverage is founded. Examples would be trustee, agent, custodian, or executor. No claim for insurance based on such a relationship will be recognized in the absence of such disclosure.

12 C.F.R. § 745.2(c)(1). It can hardly be held arbitrary or capricious that the Administration then limited the coverage to that available to one account holder.

■ Neither does the regulation itself evince caprice or arbitrariness. As the Supreme Court noted in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), analyzing the parallel insurance structure for federally insured banks, agencies evaluating a financial institution's condition must be able "to rely on a bank's

records." *Id.* at 91, 108 S.Ct. at 399. The NCUA's regulation embodies this rationale. Without such direction, neither the insuring agency nor state regulatory authorities "would be able to make reliable evaluations if bank records contained seemingly unqualified [account obligations] that are in fact subject to undisclosed conditions." *Id.* at 92, 108 S.Ct. at 399.

Additionally, this regulation and its application by the Administration in the present case address another concern expressed by the Supreme Court in *Langley:* the "fraudulent insertion of new terms" in a financial institution's documents after the institution's failure. *Id.* The Supreme Court dealt specifically with loan documents, but the possibility of "collusive reconstruction of ... terms by bank officials and borrowers (whose interest may well coincide when a bank is about to fail)," *id.* at 95, 108 S.Ct. at 399, would seem equally applicable to other account documents.

We offer this comment, not because either we or the Administration have accused Waukesha of engaging in fraud, but because the regulation is designed to prevent that possibility, and makes no exception for Waukesha. Waukesha offers external documents from its own records ostensibly showing some relationship between the accounts in question and the third parties for whose benefit it claimed to hold them. Unfortunately for Waukesha, all such evidence is from its own books, not from those of the insured institution. Thus, none of it has any effect under the regulation.

The Bank further presented evidence to the Administration by way of affidavit that its employees had received oral assurances from the credit union that the certificates, despite their contrary faces, would be held in nominee status. Again, this falls plainly outside the scope of the regulation.

The Bank asserts that the credit union's "assurances" that the accounts would be treated as nominee holdings and therefore eligible for separate insurance rather than bound by the aggregate limitation of $100,000 should ground an equitable estoppel in the Bank's favor. In support of this, the Bank asserts that "the fundamental princi-

ple of equitable estoppel applies not only to private parties, but to government agencies as well," Petitioner's Brief at 14. In support of this second proposition, the Bank offers us *ATC Petroleum, Inc. v. Sanders,* 860 F.2d 1104 (D.C.Cir.1988). While we do not intend here to explore the rather questionable bounds of the applicability of the equitable estoppel doctrine to the government, we note that the case cited by the Bank provides one of the reasons why the doctrine will not help the Bank in the present case. In *ATC Petroleum,* a small business claimed the protection of the doctrine, asserting its reliance on certain assurances received from the Small Business Administration ("SBA"). While reversing a summary judgment in favor of the SBA on other grounds, we expressly affirmed the District Court's rejection of the equitable estoppel argument. We noted above that assurances cannot estop the government where "these assurances were 'unauthorized.'" *Id.* at 1111. As we further noted, "parties dealing with the Government 'are expected to know the law and may not rely on the conduct of government agents contrary to law.'" *Id.* (quoting *Heckler v. Community Health Service,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984)).[2]

If a government employee cannot estop the government beyond his lawful authority, how much the less an employee of a third party whose only connection to the government is that his employer holds a policy of insurance issued by a government agency. Whatever the credit union officer told the Bank, he had no authority to vary the plain terms of the NCUA's disclosure regulation.

The Bank finally argues that we should follow language from the Tenth Circuit decision of *Jones v. Federal Deposit Insurance Corporation,* 748 F.2d 1400 (10th Cir. 1984). In that case, an executor of an estate challenged the Federal Deposit Insurance Corporation's determination that death benefits of over $645,000 in an estate account at a failed insured institution were subject to the $100,000 single account limitation. It was the position of the executor that the funds represented severable interests of various beneficiaries and therefore should not have been aggregated to face the $100,000 limitation. The Tenth Circuit affirmed a district court decision upholding the FDIC's determination and in so doing afforded deference to the FDIC's records regulation, 12 C.F.R. § 330.1(b), a provision substantially identical to the regulation the NCUA applied in the present case.

Though the *Jones* result offers no comfort to Waukesha, Waukesha insists that we should reach a different result based on language in *Jones:*

> If a depositor challenges the bank records ... as to their correctness, there exists a presumption of correctness which may be overcome by proof that the records do not properly and accurately reflect the instructions of the depositor to the bank.

748 F.2d at 1405.

Obviously, given the result in *Jones,* that statement by our sibling circuit is at most dictum. No decision from that circuit, this one, or any other that we have found, has ever incorporated that dicta into a holding. Nor do we now.

In sum, we conclude that the NCUA acted within its authority in adopting a regulation rendering bank records conclusive "as to the existence of any relationship pursuant to which the funds in the account are deposited and on which a claim for insurance coverage is founded." 12 C.F.R. § 745.2(c)(1). The Administration properly applied its own regulation. The Administration did nothing arbitrary or capricious in denying the claims for excess coverage by the Bank.

CONCLUSION

For the reasons set forth above, we conclude that the NCUA did not improperly

---

**2.** We also note that *ATC Petroleum* runs contrary to the Bank's general proposition concerning the applicability of equitable estoppel: "The circumstances in which the government may be estopped from asserting a claim or a defense are not well-defined, but 'it is well settled that the Government may not be estopped on the same terms as any other litigant.'" 860 F.2d at 1111 (quoting *Heckler v. Community Health Service,* 467 U.S. at 60, 104 S.Ct. at 2224).

limit insurance coverage on Waukesha Bank's accounts at the failed credit union. Accordingly, the Bank's petition is denied.