In re Alan J. ANTWEIL and Mary Frances Antweil, Hobbs Pipe and Supply, a general partnership, Morris R. Antweil, Debtors.

Elliott JOHNSON, trustee, Plaintiff,

v.

Tom KEESING, Patricia Bock Koffel, Norm Lazar, and Herman J. Ledbetter, Defendants.

Bankruptcy No. 11–86–00254 M A. Adv. No. 88–0129 M.

United States Bankruptcy Court, D. New Mexico.

June 12, 1990.

Nancy S. Cusack, Roswell, for plaintiff.

Ernest L. Carroll, Artesia, for defendant Ledbetter.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on August 23, 1989, October 6, 1989, and March 27, 1990, for trial on the merits on the trustee's suit to recover assets of the estate. Having considered the arguments of counsel, exhibits, stipulation of facts and legal memoranda submitted by the parties, having consulted the appropriate authorities and being otherwise fully informed and advised, the Court issues this memorandum opinion.

### FACTS

The parties have stipulated to the following facts:

1. Both Antweil Oil Company (Antweil) and Herman J. Ledbetter (Ledbetter) have participated extensively in the oil and gas industry in Texas and New Mexico.

2. Ledbetter and Antweil entered into a Joint Operating Agreement dated July 28, 1981, which governed their respective rights, duties and remedies with respect to the drilling operation of the Herman Wells numbers 1, 2, 3, and 4. A true and correct copy of the Joint Operating Agreement has previously been entered into evidence in this matter as Plaintiff's exhibit 1.

3. The Joint Operating Agreement, including the various exhibits thereto, are standard forms, commonly used in the oil and gas industry in Texas and New Mexico.

4. Paragraph I.4 of the Accounting Procedure Joint Operations (COPAS), attached as Exhibit C to the Joint Operating Agreement, provides in part that:

[A]ll bills and statements rendered to Non–Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non–Operator takes written exception thereto and makes claim on Operator for adjustment. No adjustment favorable to Operator shall be made unless it is made within the same prescribed period. The provisions of this paragraph shall not prevent adjustments resulting from a physical inventory of Controllable Material as provided for in Section V.

5. Pursuant to the terms of the Joint Operating Agreement, Ledbetter was entitled to provide equipment and property in kind for the drilling and operation of the Herman Wells. Pursuant to those provisions, Ledbetter provided certain items in kind to those wells. The value of the items provided was $200,357.66.

6. Beginning in April, 1982, Antweil sent Ledbetter and Ledbetter received monthly joint interest billing statements regarding Ledbetter's proportionate share of expenses for the Herman Wells. Prior to April, 1982, Antweil sent and Ledbetter

received various invoices, although not on a monthly basis, regarding Ledbetter's proportionate share of expenses for the Herman Wells.

7. The March 31, 1986 joint interest billing from Antweil to Ledbetter reflects that Ledbetter owed Antweil a balance of $110,374.97 on the Herman Wells, an amount which Ledbetter disputes.

8. As of March 31, 1986, Ledbetter had not been paid $49,033.56 for his share of revenue from the Herman Wells.

9. Ledbetter is entitled to offset all unpaid revenue against any amount he may owe Antweil. If the unpaid revenues are offset against the March 31, 1986 joint interest billing, a balance of $61,341.41 would remain.

10. Prior to January 1, 1985, Antweil credited Ledbetter's account for certain payments in cash and in kind. The joint interest billing for March 31, 1986 takes into account those credits.

11. Of the $200,357.66 of materials provided in kind by Ledbetter, Ledbetter did not receive credit for $76,744.21 on the joint interest billing statement for March 31, 1986. Ledbetter has not received credit for the $76,744.21. On August 12, 1986, Ledbetter wrote a letter to Antweil setting forth the invoice dates, invoice numbers, and invoice amounts of all materials that Ledbetter had supplied in kind.

12. In a letter dated July 29, 1982, Ledbetter was notified of an interest charge of $2,222.60 on Ledbetter's account balance as contained in Antweil's records. A copy of the letter was introduced at trial. Ledbetter expressly refuses to stipulate to the validity of the interest charge.

13. Invoice number 12–35–81 dated April 2, 1982 in the amount of $1,960.00 has been charged to Ledbetter's account. Ledbetter contends that the trustee's statement, on the record, that certain non-computerized invoices issued after April 1, 1982, should not be charged to Ledbetter's account, entitles Ledbetter to a credit of $1,960.00 for invoice number 12–35–81. The trustee contends that invoice number 12–35–81 should not be credited against Ledbetter's account balance.

14. Ledbetter has submitted evidence of over billing by Antweil on the following invoices:

(a) Antweil invoice numbers 110300 and 110301, both dated November 30, 1982, included charges for two (2) pumping units at a total cost of $55,120.00 Ledbetter supplied the two (2) pumping units to the Herman # 3 and # 4 wells at a cost of $49,660.00. Ledbetter's portion of the $5,460.00 over billing is $2,388.75.

(b) Antweil invoice number 10–1–81, dated October 27, 1981, is based in part on a charge of $97,223.76 for used casing and tubing, of which $42,535.40 was charged to Ledbetter. Ledbetter has received credit for over billing in the amount of $12,598.19, but has not received credit for the price differential between new and used pipe as provided in paragraph IV.2.B of the Accounting Procedure Joint Operations (CO-PAS) to the Operating Agreement. Said paragraph provides that the cost of used pipe furnished to the wells would be billed at 75% of the price for new pipe. Ledbetter's portion of the over billing for the used pipe is $3,516.40.

(c) Antweil joint interest billing invoice numbers 40230 and 60230 dated April 30, 1982 and June 30, 1982 respectively, contain billings from Schlumberger Well Service. Invoice numbers 4–004145 and 4–090783 are in the amounts of $5,046.28 each. Ledbetter's portion of the total expense is $4,414.50. Ledbetter contends $2,207.50 of the charge is an over billing. The trustee contends that because the invoice numbers are different, the charges are not duplicate billings.

The trustee has no records indicating that Ledbetter was not over billed in paragraph (a) and (b) above.

15. The issues to be determined as between the trustee and Ledbetter are whether Ledbetter is entitled to offset the March 31, 1986 joint interest billing statement in the amount of $110,374.97 with (1) the amounts of previously uncredited materials furnished in kind by him, (2) a credit for interest in the amount of $2,222.60 added

to Ledbetter's account in July, 1982, (3) a credit for non-computerized invoices generated after April 1, 1982, (4) a credit for over billing in the amount of $8,112.65, against the trustee's claim in light of the Accounting Procedure Joint Operations (COPAS) provisions of the Joint Operating Agreement quoted in paragraph I.4 above.

16. Ledbetter signed Authorizations for Expenditures for each of the Herman Wells for Antweil, copies of which were introduced at trial.

## DISCUSSION

The trustee contends that based on the doctrine of account stated and the Joint Operating Agreement, Ledbetter owed Antweil $110,374.97 for costs of drilling, operations and well maintenance, as of March 1986, according to the invoices sent to Ledbetter. The trustee points to the July 29, 1982 letter to Ledbetter to show that as of July 1982 the account was settled as to the amount due and owing by Ledbetter. Further, the trustee alleges that the twenty-four month limitation in the Joint Operating Agreement, which required Ledbetter to take exception in writing to any bills and statements within twenty-four months following the end of any calendar year, or they would conclusively be presumed to be true and correct, precludes Ledbetter from now claiming an off-set for materials supplied in 1982.

Ledbetter argues that the account is not an account stated, but rather a mutual open account, and that even if it is an account stated, it can be challenged on the basis of mistake. Further, the defendant contends the limitation clause is not a bar to setoff because a contractual limitation is analogous to a statute of limitations. Ledbetter cites *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567 (10th Cir.1980) for the proposition that when a compulsory counterclaim is governed by a shorter statute of limitations than that of the plaintiff's claim, the defendant may not seek relief on the counterclaim, but may offset the amount of the counterclaim to the extent that it diminishes the plaintiff's recovery.

Finally, Ledbetter raises the issues of unconscionability, estoppel and waiver.

### A. Account Stated

New Mexico case law defines account stated as:

An account which has been rendered by one to another, containing the balance which is alleged to be due, which balance is assented to or admitted to be a correct account of the debt it represents as due from the debtor.

An account stated is an account balanced, and rendered, with an assent to the balance, express or implied, so that the demand is essentially the same as if a promissory note had been given for the balance.

The assent to the balance found to be due by the account stated, which may be an express promise, or one implied as a legal conclusion from a failure to object thereto within a reasonable time, creates a new and independent cause of action, arising from the agreement, express or implied, and a legal obligation is established, irrespective of the items or constituents or the previous ground of liability.

*Leonard v. Greenleaf,* 21 N.M. 180, 153 P. 807 (1915), *quoted in Brown v. Cory,* 77 N.M. 295, 422 P.2d 33 (1967), *cited in Capps v. Ratcliff,* 66 N.M. 22, 340 P.2d 1073 (1959). *See also Hunt Process Co. v. Anderson,* 455 F.2d 700 (10th Cir.1972).

The Restatement (Second) of Contracts defines account stated:

(1) An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.

(2) The account stated does not itself discharge any duty but is an admission by each party of the facts asserted and a promise by the debtor to pay according to its terms.

Restatement (Second) of Contracts § 282 (1981).

## B. Open Account

An open account, on the other hand, is one " 'based upon running or concurrent dealings between the parties which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated.' " *Ries Biologicals v. Bank of Santa Fe*, 780 F.2d 888 (10th Cir.1986); (quoting *Wolf and Klar Cos. v. Garner*, 101 N.M. 116, 679 P.2d 258 (1984) *and Heron v. Gaylor*, 46 N.M. 230, 126 P.2d 295 (1942)).

"Open account" is further defined as: [A]n account usually and properly kept in writing, wherein are set down by express or implied agreement of the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original, express, or implied intention, there is to be but one single and indivisible liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one party or the other, as the balance shall indicate at the time of settlement or following the last pertinent entry of the account.

*Southern Union Exploration Co. v. Wynn Exploration Co. Inc.*, 95 N.M. 594, 624 P.2d 536 (Ct.App.1981), *cert. denied*, 95 N.M. 593, 624 P.2d 535 (1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 461 (1982) (quoting *Gentry v. Gentry*, 59 N.M. 395, 285 P.2d 503 (1955)).

The monthly billing statements show a series of debits and credits. Ledbetter was billed for his share of expenses and received credit for some materials he provided and for revenues due to him on various gas or oil runs. Ledbetter testified that he orally objected to the accounting figures on more than one occasion and that he had not been given credit for materials he provided in 1981 and 1982, as of the July 29, 1982 letter. The trustee alleges that the July 29, 1982 letter was an attempt to settle the account. The letter stated that a credit for suspended runs in the amount of $84,251.08 would be applied to Ledbetter's account, that interest in the amount of $2,222.60 was being charged on amounts unpaid, and that Ledbetter still owed $30,000.00. The monthly billing statements show the $84,251.08 credit was applied to the account, $2,222.60 in interest was charged, and Ledbetter tendered a check for $30,000.00 on August 2, 1982 for the balance due. The trustee argues that this constitutes expressed agreement to the amount due on the account. Ledbetter argues that it is nothing more than an attempt to offset a credit on suspended runs against a balance due for costs of operation, and that it was not an account stated or an account that was settled.

Ledbetter was still owed credit for materials provided as of the July 29, 1982 letter, and the parties continued to do business, adding debits and credits on the account. Ledbetter cannot be said to have expressly assented to an account stated by his actions in 1982. The account was not settled as of July 1982 and was not an account stated at that point in time but rather an open account.

## C. Account Stated by Contractual Agreement

The distinction between account stated and open account becomes academic, however, because the Joint Operating Agreement is controlling in this case. It provides for monthly billings to be sent each month showing charges and credits. It further provides that "all bills and statements rendered to Non–Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non–Operator takes written exception thereto and makes claim on Operator for adjustment." Thus, an account stated was

created by contractual agreement at the end of each calendar year, requiring Ledbetter to object to any disputed amounts in writing within twenty-four months.

While Ledbetter orally objected to the accounting procedures, interest charged and mistakes on his account, he did not take written exception, as required under the Joint Operating Agreement, until August 12, 1986. At that time, he wrote a letter requesting credit for the materials he provided in 1981 and 1982 totaling $200,-357.66.

**D. Mistake**

■ Once an account stated is found, mistake may be grounds to question the account balance. *Brown & Manzanares Co. v. Gise*, 14 N.M. 282, 91 P. 716 (1907); Restatement (Second) of Contracts § 282 (1981); 6 Corbin on Contracts § 1310 (1964). In this case, however, there is a contractual limitation in which the parties agreed that twenty-four months was a reasonable time to object and that all statements would be conclusively presumed to be true and correct thereafter.

Ledbetter testified that he did not look closely at the earlier joint interest billings because he was going through a bitter divorce. This was in spite of the fact that he knew that he had not been credited for some of the materials he provided in 1982. Further, according to Ledbetter's testimony, he did not trust Antweil because he believed Antweil was billing him for new material and substituting used material in the field. In that instance, Ledbetter had a duty to review the joint interest billings, demand an accounting, and object in writing, which he failed to do. Under the provisions of the Joint Operating Agreement, he has waived his right to object to the amounts billed after the twenty-four month limitation period expired on the basis of mistake.

**E. Contractual Limitation**

■ Defendant's attempt to analogize a contractual limitation to a statute of limitations and reliance on *Hartford* is inappropriate. *Hartford* involved a statute of limi-

tations for a cause of action based in tort law. The instant case involves a limitation that the parties agreed to by virtue of a binding contract. The Court must confine its interpretation of a contract made by the parties to the contractual instrument and not make a new agreement for the parties by rewriting the contract. *DiGesu v. Weingardt*, 91 N.M. 441, 575 P.2d 950 (1978); *Kimberly, Inc. v. Hays*, 88 N.M. 140, 537 P.2d 1402 (1975); *Davies v. Boyd*, 73 N.M. 85, 385 P.2d 950 (1963).

**F. Unconscionability, Estoppel and Waiver**

■ Defendant's arguments regarding unconscionability, estoppel and waiver are without merit. Ledbetter himself testified that the Joint Operating Agreement was a standard operating agreement used in the business and that he was familiar with it and had used the same form himself on previous occasions when he was acting as an Operator. Both parties were knowledgeable participants in the oil and gas business. The Court finds no procedural unconscionability with an absence of meaningful choice as articulated in *Guthmann v. La Vida Llena*, 103 N.M. 506, 709 P.2d 675 (1985). Further, the Court does not agree with defendant's assertion that a contractual limitation, which requires one party in an agreement to take written exception within a twenty-four month period, is substantively unconscionable as a contract term that is illegal, contrary to public policy or grossly unfair. Further, there is no evidence of estoppel or waiver on the part of Antweil.

**G. Interest and Attorneys' Fees**

■ Paragraph I.3 of the Accounting Procedure Joint Operations (COPAS) provides:

Each Non–Operator shall pay its proportion of all bills within fifteen (15) days after receipt. If payment is not made within such time, the unpaid balance shall bear interest monthly at the rate of twelve percent (12%) per annum or the maximum contract rate permitted by the applicable usury laws in the state in

which the Joint Property is located, whichever is the lesser, plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts.

While the contract gave Antweil the right to charge interest, Antweil's joint interest billings show that, other than the $2,222.60 interest charge in July 1982, interest was not charged for amounts overdue on a monthly basis, and is not included in the total amount claimed as due and owing in the plaintiff's complaint. Thus, Antweil has waived his right to any interest which was not previously billed.

■ Counsel for plaintiff asked for attorneys' fees during opening statement and closing argument, based on paragraph I.3 of the Accounting Procedure Joint Operations (COPAS). However, the prayer in the complaint does not ask for attorneys' fees, the pre-trial order does not mention it as an issue, and plaintiff presented no evidence at trial with respect to attorneys' fees. Therefore, no attorneys' fees will be awarded.

H.  Conclusion

The Court finds the result in this case distasteful due to the fact that the defendant is now liable for a debt for which he was over billed and for which he was not given credit for materials he provided. However, he entered into the contract with full knowledge and did not comply with the requirement to take exception in writing within the limitation period. He must now abide by his own agreement. To find otherwise would rewrite the contract, which the Court is unwilling to do.

Therefore, the Court finds that plaintiff is entitled to judgment in the amount of $110,374.97, but defendant is entitled to offset the revenues owed to him in the amount of $49,033.56. This leaves a balance of $61,341.41. Defendant is not entitled to offset credit for materials provided in 1981 and 1982, interest charged in 1982, credit for non-computerized invoices after 1982, and amounts over billed in 1981 and 1982. Interest on the judgment will be awarded at the judgment rate from entry of the judgment forward. No interest will be awarded on either the balance due to plaintiff or on the amount of revenues owed to defendant. Both parties will bear the cost of their own attorneys' fees.

This memorandum opinion constitutes the Court's Findings of Fact and Conclusions of Law. Bankruptcy Rule 7052.

An appropriate order shall enter.