**In re COLLINS SECURITIES CORPORATION, Debtor.**

**Harvey BELL, Trustee for the Liquidation of Collins Securities Corporation, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for FirstSouth Federal Savings and Loan Association; Federal Deposit Insurance Corporation, as Successor to Federal Savings and Loan Insurance Corporation, Insurance Division; Defendants–Appellees,**

**Securities Investor Protection Corporation, Objector–Appellant.**

No. 92–2708.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1993.

Decided June 30, 1993.

Michael E. Don, Washington, DC, argued (Kenneth J. Caputo and Theodore H. Focht, Washington, DC and William L. Owen, Little Rock, AR, on the brief), for appellant.

Z. Scott Birdwell, Washington, DC, argued (Thomas A. Schulz, Charles L. Cope, II, and Colleen Bombardier, Washington, DC, on the brief) and Barbara W. Webb and Christopher O. Parker, Little Rock, AR, on the separate brief of FirstSouth), for appellees.

Before LOKEN, HANSEN, Circuit Judges, and MURPHY,* District Judge.

LOKEN, Circuit Judge.

The trustee for bankrupt Collins Securities Corporation filed a $100,000 deposit insurance claim with Federal Deposit Insurance Corporation's predecessor, alleging an insured account with insolvent FirstSouth Federal Savings and Loan Association of Pine Bluff, Arkansas. FDIC denied the claim because FirstSouth had paid the account balance to Collins's assignor, albeit mistakenly, long before the bank failed. The trustee seeks judicial review of that denial. The district court,[1] adopting the recommendations of the bankruptcy court,[2] upheld FDIC's denial. *In re Collins Sec. Corp.,* 145 Bankr. 277 (E.D.Ark.1992). The trustee appeals, supported by Securities Investor Protection Corporation (SIPC) as objector-appellant. We affirm.

## I.

In January 1985 Kar–Mal Venture Capital deposited $100,000 at FirstSouth and received a thirty-day time certificate of deposit (CD) transferable "only upon the books of the Association." The next day, Kal–Mar assigned and delivered the CD to a subsidiary of Collins, and a FirstSouth vice president "accepted" that assignment in writing. The CD was renewed in February in the name of Kar–Mal as accountholder. Apparently, notation of the renewal deleted notation of the assignment from FirstSouth's computerized account records. On April 8, 1985, FirstSouth honored a withdrawal request and wired the entire $100,000 to the

---

* The HONORABLE DIANA E. MURPHY, Chief Judge of the United States District Court for the District of Minnesota, sitting by designation.

1. The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas.

2. The HONORABLE MARY DAVIES SCOTT, United States Bankruptcy Judge for the Eastern District of Arkansas.

personal account of a Kar–Mal principal. The CD account was thereafter reflected on FirstSouth's account records as closed.

In November 1986, the trustee for the now-bankrupt Collins filed a $100,000 adversary claim in bankruptcy court against the still-solvent FirstSouth, alleging negligence and breach of contract in paying out the CD account to Kar–Mal despite the assignment to Collins. FirstSouth was declared insolvent in December 1986. Federal Savings and Loan Insurance Corporation (FSLIC) became FirstSouth's receiver, and the trustee's claim was dismissed for failure to exhaust administrative remedies. *See Bueford v. RTC,* 991 F.2d 481 (8th Cir.1993).

In September 1987, the trustee filed an administrative claim against FSLIC, both in the agency's capacity as receiver (successor in interest to FirstSouth), and in its capacity as insurer of FirstSouth's deposit accounts. The trustee claimed a right to the $100,000 as a general creditor of FirstSouth, as a secured creditor, and as the holder of an insured account.

On June 29, 1989, FSLIC as receiver allowed the trustee's general unsecured claim for $100,000, concluding that the trustee had proved "that the Account was improperly paid to the wrong party." The trustee's secured claim was disallowed because no collateral secured the claim on the date of default. At the time of oral argument, FDIC as successor receiver[3] had paid the trustee approximately $35,000 on the allowed claim. Though a party, FDIC as receiver has no interest in this appeal.

On March 23, 1989, FSLIC's Insurance Division denied the trustee's insurance claim. On September 28, 1989, FDIC's division of FSLIC operations rejected the trustee's request for reconsideration, concluding:

It may well be that FirstSouth is liable to Collins because FirstSouth mistakenly allowed the KAR–MAL princip[al] to withdraw all of the funds from Account 584 in April 1985.... However, the issue presented herein is not that of [FirstSouth's] legal liability.... As of the date of default, [the CD account] did not exist on the books and records of FirstSouth, and Collins clearly had no right to withdraw any funds from FirstSouth as of such date.... [T]he initial determination properly denied Collins' claim for insurance coverage.

The trustee then commenced this action for judicial review of the insurance claim denial. The bankruptcy court recommended that summary judgment be granted in favor of FDIC because "[t]he FSLIC insurance regulations specifically provide that the books and records of the insolvent institution are controlling," and "[t]here are no records in the administrative file which demonstrate that the trustee is a 'depositor' or held an 'insured account'" when FirstSouth failed. The district court adopted that recommendation and dismissed the insurance coverage claim. 145 Bankr. at 278–79, 289, 291. The trustee and SIPC appeal.

## II.

The parties agree that we review FDIC's denial of a deposit insurance claim under the Administrative Procedure Act, 5 U.S.C. § 706, to determine whether the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 12 U.S.C. § 1821(d)(4); *Nimon v. RTC,* 975 F.2d 240, 244 (5th Cir. 1992). The parties also agree that, as successor to FSLIC's insurance obligations, FDIC was required to apply the FSLIC statutes and regulations in effect in 1986, when FirstSouth failed. *See* FIRREA §§ 401(f)(1), 402(a), 103 Stat. 356, 358.

In 1986, FSLIC was obligated to provide "insurance up to the full withdrawal or repurchasable value of the accounts of each of its members," subject to a $100,000 ceiling. 12 U.S.C. § 1728(a) (1988). An "insured account" was defined as "a share, certificate, or deposit account ... held by an insured member in an insured institution." 12 U.S.C. § 1724(c) (1988). FSLIC's regulations provided that "[t]he amount of an insured account is the amount which the insured mem-

---

**3.** In August 1989, FSLIC was abolished by Title IV of the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989), codified at 12 U.S.C. §§ 1811–31, and FDIC assumed all FSLIC rights and duties.

ber would have been entitled to withdraw as of the date of default." 12 C.F.R. § 564.1(b) (1986).

Appellants argue that the CD held by Collins was an insured account. Kar–Mal's assignment, accepted by FirstSouth, proves that Collins owned the account. FirstSouth's wrongful payment of the account to the Kar–Mal principal did not affect Collins's rights as accountholder. Therefore, FDIC's disallowance of the insurance claim was arbitrary and capricious. Like FDIC and the district court, we conclude that the third link in this chain is unsound—FirstSouth's mistaken payment may not have affected Collins's rights against the bank, but it did extinguish the insured account.

We deal here with a statutory deposit insurance regime, created from the harsh reality of the Great Depression, when one-third of the nation's banks failed in a four-year period. "The focus of Congress was therefore upon ensuring that a deposit of 'hard earnings' entrusted by individuals to a bank would not lead to a tangible loss in the event of a bank failure." *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 432–33, 106 S.Ct. 1931, 1935, 90 L.Ed.2d 428 (1986).

■ To be entitled to deposit insurance when a bank fails, one must own an insured deposit, the hard earnings entrusted to a bank referred to in *Philadelphia Gear.* The "hard earnings entrusted" concept was clearly expressed in the FSLIC statute—savings and loan members were insured "up to the full withdrawal or repurchasable value of the[ir] accounts," 12 U.S.C. § 1728(a) (1988)—as well as in the FDIC statute, where insured deposit was defined as "the unpaid balance of money or its equivalent received or held by a bank." 12 U.S.C. § 1813(*l*) (1986).[4] *Philadelphia Gear* was concerned with whether a standby letter of credit is a deposit, in other words, whether "hard earnings" ever went into the bank. In this case, there is no question that $100,000

cash went into FirstSouth; the question is whether the deposited money went out prior to the bank's insolvency.

■ The premiums banks pay for this deposit insurance are based upon deposits as shown on their account records.[5] Given this statutory scheme, it is plainly rational for FSLIC and FDIC to base their determination of whether a deposit account existed when the bank failed upon the same books and records from which premiums had been determined. To permit a failed bank's insured deposits to be inflated by extraneous evidence of additional obligations would violate fundamental insurance principles and jeopardize the financial integrity of the deposit insurance system. Thus, FSLIC's and FDIC's longstanding practice of looking primarily at the failed bank's deposit account records in determining insurance claims is clearly a permissible interpretation of their statutory mandates. *Compare Philadelphia Gear,* 476 U.S. at 439, 106 S.Ct. at 1938–39 (FDIC's failure to levy premiums on standby letters of credit supports agency's determination these are not insured obligations).

■ Here, it is undisputed that First-South closed the $100,000 CD account when it paid the Kar–Mal principal in April 1985. FirstSouth paid no deposit insurance premiums on that $100,000 from April 1985 to its December 1986 insolvency. Appellants argue that Collins had a continuing right to withdraw the $100,000 because FirstSouth was liable for having mistakenly paid out the account proceeds. However, appellants are confusing the right to recover from the bank with the right to withdraw from an insured account. Before it failed, FirstSouth rejected Collins's demand to withdraw the $100,000, and the trustee filed negligence and breach of contract claims for mistaken payout of the funds. As FDIC observed, that was the trustee's appropriate remedy, and it survived against FDIC as receiver. But FirstSouth's subsequent insolvency did not

---

4. This latter definition survives today in FIRREA. *See* 12 U.S.C. § 1813(*l*).

5. Under present law (FIRREA), premiums are computed semiannually from an assessment base "equal to the depository institution's liability for deposits," 12 U.S.C. § 1817(b)(4)(A), using "the

definition of the term 'deposit' in and pursuant to [§ 1813(*l*)]." 12 U.S.C. § 1817(a)(4). The prior FSLIC statute similarly based premiums upon insured members' accounts. *See* 12 U.S.C. § 1727(b)(1) (1986).

expand the trustee's remedies. Deposit insurance protects depositors from loss due to the bank's insolvency, not loss from the bank's pre-insolvency mistakes, which is frequently covered by errors and omissions insurance.[6]

Ignoring these broader insurance principles, appellants rely primarily upon the introductory provision in the applicable FSLIC regulations, which directed the agency:

> In the event of a default by an insured institution, the Corporation will promptly determine from the account contracts and the books and records of the institution, *or otherwise,* the insured members thereof and the amount of the insured account or accounts of each such member.

12 C.F.R. § 564.1(a) (1986) (emphasis added). Because the phrase *or otherwise* is included in § 564.1(a), appellants argue that FDIC "abused its discretion by considering only [FirstSouth's] books and records, and by not considering evidence otherwise submitted by the Trustee." However, no prior case has placed any weight on this phrase. In applying FDIC's comparable regulation, 12 C.F.R. § 330.1, which has no *or otherwise* phrase, courts have given great deference to the agency's reliance upon the failed bank's account records, permitting the depositor to introduce additional evidence only to show that the bank "did not follow the depositor's instructions as to the proper characterization of the account." *Abdulla Fouad & Sons v. FDIC,* 898 F.2d 482, 485 (5th Cir.1990). *See also Lambert v. FDIC,* 847 F.2d 604 (9th Cir.1988); *Jones v. FDIC,* 748 F.2d 1400 (10th Cir.1984). Similarly, a recent case interpreting the FSLIC statute and regulations held that the bank's books and records are conclusive unless "both the deposit and the account were clearly documented in the

bank records." *City of Arlington v. FDIC,* 963 F.2d 79, 82 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992). *See also Waukesha State Bank v. National Credit Union Admin.,* 968 F.2d 71 (D.C.Cir.1992) (failed credit union). Here, the only issue is whether an insured account existed when FirstSouth failed. On that issue, no recent case has challenged the agencies' view that the bank's account records are conclusive.[7]

Appellants also cite a group of early cases in which the issue was whether an insured account existed and the failed bank's account records were not given conclusive effect. In *FDIC v. Records,* 34 F.Supp. 600 (W.D.Mo. 1940), a bank cashier took the depositor's money, marked the deposit in the depositor's passbook, and then embezzled the money without recording it on the bank's account records. Similarly, in *Jones v. FDIC,* 24 F.Supp. 985 (W.D.Okla.1938), and in *Barton v. Johnson,* 24 F.Supp. 987 (W.D.Okla.1938), *aff'd, FDIC v. Barton,* 106 F.2d 737 (10th Cir.1939), dishonest bank employees falsified the deposit account records prior to insolvency. In each case, the court permitted the depositor to prove the existence of an insured account by evidence outside the bank's account records. However, these cases merely reflect the well-established principle that records that would otherwise be conclusive evidence may be attacked as fraudulent. *See, e.g., Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1413–14 (5th Cir.1993) (contractually created conclusive presumption attaching to account statements may be overcome by proof of fraudulent concealment); *Sanitary Farm Dairies v. Gammel,* 195 F.2d 106, 113–14 (8th Cir.1952); *Exxon Corp. v. Crosby–Mississippi Resources, Ltd.,* 775 F.Supp. 969, 976 (S.D.Miss.1991); *How-*

---

6. We think our conclusion that deposit insurance does not cover losses attributable to a solvent bank's mistaken payout of deposited funds is consistent with cases holding that deposit insurance may never be recovered if the bank is solvent because deposit insurance is intended to cover only losses caused by insolvency. *See, e.g., Ehrlich v. FDIC,* 357 F.Supp. 196, 197–98 (N.D.Ill.1973).

7. As FDIC notes, another FSLIC regulation provided that the bank's account records are "con-

clusive as to the existence of any relationship [such as trustee or custodian] pursuant to which ... a claim for insurance coverage is founded." 12 C.F.R. § 564.2(b) (1988). Appellants correctly respond that this regulation does not apply because there is no relationship issue in this case. But we find this specific regulation further reason not to place great weight on the *or otherwise* phase in the general introductory regulation, § 564.1(a).

*ard v. State,* 217 Tenn. 556, 399 S.W.2d 738, 740 (1966) (records of court proceedings "conclusive unless attacked for fraud"); 68 C.J.S. *Partnership* § 92 (statements of account are conclusive on partners unless impeachable because of fraud). In this case, there is no allegation of fraud—FirstSouth's account records accurately reflected payout of $100,000 to the wrong party.

Finally, we cannot accept appellants' assertion that FDIC ignored relevant evidence in this case. The agency decision reflects that it was fully aware of the Kar–Mal assignment to Collins and FirstSouth's mistaken payout but concluded that there was nonetheless no insured account. FirstSouth's account records supported this conclusion and, absent evidence of fraud, it was reasonable for the agency to consider the account records conclusive as to whether an insured deposit existed when the bank failed. In these circumstances, we agree with the district court that FDIC was not arbitrary or capricious in denying the trustee's deposit insurance claim.

The judgment of the district court is affirmed.