**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AVIVA LIFE & ANNUITY COMPANY;
AMERICAN INVESTORS LIFE
INSURANCE COMPANY,

        Plaintiffs - Appellants,

    v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

        Defendant - Appellee.

No. 10-3163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 5:09-CV-04025-SAC-KGS)**

---

Jodi M. Hoss (Bruce E. Baty, with her on the briefs), SNR Denton US LLP, Kansas City, Missouri, for Plaintiffs-Appellants.

Minodora D. Vancea, Counsel, Federal Deposit Insurance Corporation, Arlington, Virginia (Barry R. Grissom, United States Attorney, and Jackie A. Rapstine, Assistant United States Attorney, District of Kansas, Department of Justice, Topeka, Kansas; Colleen J. Boles, Assistant General Counsel, and Lawrence H. Richmond, Senior Counsel, Federal Deposit Insurance Corporation, Arlington, Virginia, with her on the brief), for Defendant-Appellee.

---

Before **MURPHY, McKAY,** and **O'BRIEN,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

Aviva Life & Annuity Company and American Investors Life Insurance Company (together, "Plaintiffs") contend the Federal Deposit Insurance Corporation ("FDIC") acted in an arbitrary and capricious manner in rendering insurance determinations concerning certain of Plaintiffs' bank deposit accounts. They appeal from the district court's order upholding the FDIC's determinations. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **AFFIRMS**.

## I.      Background

The pertinent facts are undisputed. On August 22, 2008, the Kansas Bank Commissioner closed Columbian Bank & Trust Company ("Columbian") and appointed the FDIC as receiver. At that time, Plaintiffs maintained twelve deposit accounts at Columbian, containing approximately $11.3 million. The bulk of those funds were held in two accounts (the "Challenged Accounts"): the "Aviva Life & Annuity Operating Account," containing $4,242,854.60; and the "American Investors Life Ins Co Inc. Operating Account," containing $7,098,344.56. The remaining accounts contained either $1,000 or $10,000 each and bore a variety of titles. Shortly after its appointment as receiver, the FDIC determined that each Plaintiffs' respective accounts identified as "operating" accounts, which included the Challenged Accounts, would be aggregated as corporate accounts pursuant to 12 C.F.R. § 330.11. The FDIC further determined that the

accounts designated as "benefits" accounts would be separately insured as annuity contract accounts pursuant to 12 C.F.R. § 330.8.

Plaintiffs filed the underlying action, asserting that the FDIC's insurance determination was arbitrary and capricious because the Challenged Accounts should properly have been treated as annuity contract accounts. The district court issued a written order rejecting Plaintiffs' arguments, affirming the FDIC's determination, and dismissing the action. It is from this order that Plaintiffs now appeal.

## II.    Standard of Review

Under 12 U.S.C. § 1821(f)(4), "[a] final determination made by the [FDIC] regarding any claim for insurance coverage shall be a final agency action reviewable in accordance with" the Administrative Procedure Act ("APA"). The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under this standard is "highly deferential" to the agency's determination. *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 451 F.3d 1183, 1188 (10th Cir. 2006). "The duty of a court reviewing agency action under the 'arbitrary and capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Citizens' Comm. To Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008) (quotation omitted). A presumption of validity attaches to agency action, and the burden is on the party seeking review to establish that the challenged

-3-

agency action is arbitrary or capricious. *Id.* Furthermore, "[j]ust as we defer to an

agency's reasonable interpretations of [its authorizing] statute when it issues regulations

in the first instance, the agency is entitled to further deference when it adopts a

reasonable interpretation of regulations it has put in force." *Fed. Express Corp. v.*

*Holowecki*, 552 U.S. 389, 397 (2008) (citation omitted).

### III.    Regulatory Framework and the FDIC's Determination

The FDIC serves as an insurance company created by Congress to promote

stability and soundness in the nation's banking system. *Jones v. FDIC*, 748 F.2d 1400,

1402 (10th Cir. 1984). Accordingly, one of the FDIC's principal duties when it acts as

receiver is to make insurance payments to the depositors of the failed institution. *Id.* The

FDIC is required by the Federal Deposit Insurance Act to "aggregate the amounts of all

deposits in the insured depository institution which are maintained by a depositor in the

same capacity and the same right," and insure them up to the standard maximum deposit

insurance amount ("SMDIA"). 12 U.S.C. § 1821(a)(1)(C).[1] The statute, however does

not define "capacity" or "right." Instead, Congress authorized the FDIC to promulgate

regulations to define any terms necessary to implement the statute. *Id.* § 1819(a).

---

[1] At the time of Columbian's closing, the SMDIA was $100,000. *See* 12 U.S.C. § 1821(a)(1)(E) (2008). Congress has since increased the SMDIA to $250,000. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub L. No. 111-203, § 335, 124 Stat. 1376, 1540 (2010) (codified at 12 U.S.C. § 1821(a)(1)(E) (2010)). This increase was made retroactively applicable to the period when the FDIC was appointed as receiver for Columbian. 12 U.S.C. § 1821(a)(1)(E). The parties have made no reference to these statutory changes, and the court has not considered those changes in resolving the issue presented in this appeal.

The FDIC chose to effectuate its congressional mandate by erecting a regulatory framework based on "ownership rights and capacities":

> The insurance coverage provided by the Act . . . is based upon the ownership rights and capacities in which deposit accounts are maintained at depository institutions. All deposits in an insured depository institution which are maintained in the same right and capacity . . . shall be added together and insured in accordance with this part. Deposits maintained in different rights and capacities, as recognized under this part, shall be insured separately from each other.

12 C.F.R. § 330.3(a). The deposit account "rights and capacities" recognized in the FDIC's regulations pertinent to the instant appeal are (i) corporate accounts, *id.* § 330.11(a); and (ii) annuity contract accounts, *id.* § 330.8. Deposit accounts falling into the corporate account category "shall be added together and insured up to the SMDIA in the aggregate." *Id.* § 330.11(a)(1). By contrast, "[f]unds held by an insurance company or other corporation in a deposit account for the sole purpose of funding life insurance or annuity contracts and any benefits incidental to such contracts, shall be insured separately in the amount of up to the SMDIA *per annuitant*," provided certain additional requirements are satisfied. [2] *Id.* § 330.8 (emphasis added). That is to say, corporate accounts are only eligible for insurance coverage up to the SMDIA, while funds held in an annuity contract account could potentially be insured for many multiples of that

_____

[2] Annuity contract accounts are entitled to per annuitant coverage "provided that, pursuant to a state statute: (1) The corporation establishes a separate account for such funds; (2) The account cannot be charged with the liabilities arising out of any other business of the corporation; and (3) The account cannot be invaded by other creditors of the corporation in the event that the corporation becomes insolvent and its assets are liquidated." 12 C.F.R. § 330.8.

amount.

Shortly after Columbian went into receivership, the FDIC began an investigation to determine the insurance treatment appropriate for Plaintiffs' various accounts. Plaintiffs indicated the Challenged Accounts were maintained for and on behalf of their annuity customers, to fund annuity contracts and the benefits incidental to such contracts, and that they therefore constituted annuity contract accounts, entitled to per annuitant insurance under C.F.R. § 330.8. The FDIC, however, concluded the Challenged Accounts would be insured according to their denomination on the Bank's records: because the Challenged Accounts were each entitled "operating account," they were to be aggregated as corporate accounts and insured, together with each Plaintiffs' other respective corporate accounts, up to the SMDIA of $100,000. Consequently, the approximately $11.3 million in deposits contained in the Challenged Accounts were entitled to merely $200,000 total insurance, with the remainder to be paid on a pro rata basis from Columbian's liquidated assets. Had the Challenged Accounts been deemed eligible for per annuitant coverage under § 330.8, it appears they would have been insured in the total amount of $8,605,261.94.

The FDIC's final determination does not explicitly state as much,[3] but the parties

_____

[3] Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S 29, 43 (1983) (quotation and citation omitted).

agree its conclusion was predicated upon an application of 12 C.F.R. § 330.5(a)(1), which

provides that:

> [I]n determining the amount of insurance available to each depositor, the FDIC shall presume that deposited funds are actually owned in the manner indicated on the deposit account records of the insured depository institution. If the FDIC, in its sole discretion, determines that the deposit account records of the insured depository institution are clear and unambiguous, those records shall be considered binding on the depositor, and the FDIC shall consider no other records on the manner in which the funds are owned. If the deposit account records are ambiguous or unclear on the manner in which the funds are owned, then the FDIC may, in its sole discretion, consider evidence other than the deposit account records of the insured depository institution for the purpose of establishing the manner in which the funds are owned. Despite the general requirements of this paragraph . . . if the FDIC has reason to believe that the insured depository institution's deposit account records misrepresent the actual ownership of deposited funds and such misrepresentation would increase deposit insurance coverage, the FDIC may consider all available evidence and pay claims for insured deposits on the basis of the actual rather than misrepresented ownership.

"Deposit account records" are defined as "account ledgers, signature cards . . . and other

books and records of the insured depository institution . . . which relate to the insured

depository institution's deposit taking function." 12 C.F.R. § 330.1(e). In the case of the

Challenged Accounts, the signature cards indicated that the "ownership of the account"

was a "corporation" for "business purpose," and Columbian's account ledgers described

the Challenged Accounts as "operating" accounts. Exercising its prerogative under §

330.5, the FDIC determined these deposit accounts records clearly and unambiguously

indicated the Challenged Accounts were corporate accounts, and refused to consider

Plaintiffs' evidence to the contrary.

Plaintiffs contend the FDIC acted arbitrarily and capriciously in relation to the Challenged Accounts because § 330.5 is inapplicable to the determination whether a deposit account is entitled to per annuitant coverage under § 330.8. They assert that the touchstone of an annuity contract account under FDIC regulations is its intended purpose. *See id.* § 330.8(a) (defining annuity contract accounts as "[f]unds held by an insurance company . . . in a deposit account *for the sole purpose* of funding life insurance or annuity contracts" (emphasis added)). Section 330.5, by contrast, provides a rule governing the evidence the FDIC may consider when determining a deposit account's *ownership*. *Id.* § 330.5(a)(1) (providing that "the FDIC shall presume that deposited funds are actually *owned* in the manner indicated on the deposit account records" (emphasis added)). Because the two regulations, in their reading, have nothing to do with one another, Plaintiffs assert it was arbitrary and capricious for the FDIC to artificially restrict its analysis of the Challenged Accounts to Columbian's deposit account records.

Plaintiffs' preferred reading conflicts with the plain language of the contested regulations. Section 330.3(a) provides that FDIC insurance coverage "is based upon the *ownership rights and capacities* in which deposit accounts are maintained." (emphasis added). There is no indication that annuity contract accounts under § 330.8 are exempted from this general maxim. Section 330.5(a)(1), in turn, directs the FDIC to "presume that deposited funds are actually owned in the manner indicated on the deposit account records of the insured depository institution." Nothing in § 330.5 indicates that funds purportedly held in an annuity contract account are exempted from this rule. Finally, §

-8-

330.8(a) describes the manner of ownership that must be present in order for a deposit account to be insured on a per annuitant basis: the funds in that account must be "held by an insurance company . . . for the sole purpose of funding life insurance or annuity contracts." In the final analysis, the regulatory framework is seamless. No plausible reading of these regulations supports Plaintiffs' contention that a depositor, simply by claiming his deposit account was owned with the *intention* of funding annuity payments, can evade § 330.5's requirement that such intention be clearly and unambiguously indicated upon the bank's deposit account records.

If there were any doubt this reading is correct, such doubt is obviated by the FDIC's longstanding interpretation of the regulations. *See Bell v. FDIC (In re Collins Secs. Corp.)*, 998 F.2d 551, 554 (8th Cir. 1993) (discussing the "FDIC's longstanding practice of looking primarily at the failed bank's deposit account records in determining insurance claims"). In promulgating § 330.5, the FDIC explained that its record-keeping and evidentiary regulations were "based upon a basic principle: *In paying insurance*, the FDIC is entitled to rely on the account records of the failed depository institution." Simplification of Deposit Insurance Rules, 63 Fed. Reg. 25750, 25751 (May 11, 1998) (codified at 12 C.F.R. pt. 330) (emphasis added). The highlighted language indicates that the evidentiary rule of § 330.5 was meant to apply universally. As the FDIC explained, its policy of "strict reliance on the account records serves multiple purposes," allowing the FDIC to quickly estimate its insurance liability and pay insured depositors, while limiting the opportunities for depositors to fraudulently increase their insurance coverage.

-9-

*Id.* [4] The rationale for § 330.5 applies with equal force to all categories of deposit account ownership, including annuity contract accounts.

Because the FDIC's position that § 330.5 operates to restrict the evidence that may be considered when determining whether a deposit account qualifies for per annuitant insurance under § 330.8 is reasonable, it *must* be accepted. *Fed. Express Corp.*, 552 U.S. at 397; *see also Jones* 748 F.2d at 1405 ("When an agency is interpreting its own regulation, the Courts have given added deference to the agency's construction and the standard of review . . . is [the] plainly erroneous or inconsistent standard."). We therefore reject Plaintiffs' contrary reading of the regulations. Furthermore, because the FDIC's final determination regarding the Challenged Accounts comports with its reasonable interpretation of the regulations, that determination was neither arbitrary nor capricious.

## IV. The FDIC's Reversal of Position

Plaintiffs alternately contend that, even if the FDIC was correct in its belief that § 330.5 applies to determinations of coverage under § 330.8, it acted in an arbitrary and capricious manner in reversing the determinations made by lower-level FDIC agents prior to the final decision. These intermediate determinations, which concluded the

---

[4] The FDIC's decision to effectuate its statutory mandate by assigning dispositive weight to clear and unambiguous deposit account records has been repeatedly upheld by the courts. *See, e.g., Jones v. FDIC*, 748 F.2d 1400, 1405 (10th Cir. 1984); *Villafañe-Neriz v. FDIC*, 75 F.3d 727, 731-32 (1st Cir. 1996); *Raine v. Reed*, 14 F.3d 280, 283 (5th Cir. 1994) (describing the "well-grounded history of permitting the FDIC to rely exclusively on the books and records of an insolvent institution . . . in making [its] many deposit insurance determinations"); *Bell v. FDIC (In re Collins Secs. Corp.)*, 998 F.2d 551, 554 (8th Cir. 1993).

Challenged Accounts *did* constitute annuity contract accounts, were apparently communicated to Plaintiffs at various times before the FDIC ultimately reached its final, contrary, determination. Based on these communications, Plaintiffs infer the FDIC had, at one point, concluded the deposit accounts records *were* "ambiguous or unclear on the manner in which the funds were owned," thereby allowing it to consider certain supplementary materials offered by Plaintiffs as proof of the Challenged Accounts' true nature. *See* 12 C.F.R. § 330.5 ("If the deposit account records are ambiguous or unclear on the manner in which the funds are owned, then the FDIC may, in its sole discretion consider evidence other than the deposit account records. . . ."). Having previously made the decision to consider extrinsic evidence, and having concluded based on that evidence that the Challenged Accounts constituted annuity contract accounts, Plaintiffs assert it was arbitrary and capricious for the FDIC to reverse course without articulating a reason for its decision.[5]

---

[5] Citing the intermediate determinations as proof, Plaintiffs also contend the FDIC's consideration of the extrinsic evidence gave it "reason to believe that [Columbian]'s deposit account records misrepresent the actual ownership of" the Challenged Accounts, thereby permitting the FDIC to "consider *all available evidence* and pay claims . . . on the basis of the actual rather than the misrepresented ownership." 12 C.F.R. § 330.5 (emphasis added). This exception to § 330.5's general rule, however, is only applicable if the suspected misrepresentation in the deposit account records "would *increase* deposit insurance coverage." *Id.* (emphasis added). The deposit account records here indicate that the Challenged Accounts were general corporate accounts. If this were a misrepresentation, and the Challenged Accounts were actually annuity contract accounts, then the misrepresentation would have the effect of *decreasing* their deposit insurance coverage. Consequently, the exception is inapplicable.

There is no provision within the Federal Deposit Insurance Act authorizing federal court review of intermediate FDIC determinations. *Cf.* 12 U.S.C. § 1821(f)(4) (authorizing judicial review of "final agency actions"). Plaintiffs acknowledge as much, but assert it is this court's duty to nevertheless "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Citizens' Comm. To Save our Canyons*, 513 F.3d at 1176. Presumably, they mean to say that the extrinsic evidence allegedly considered by the FDIC in forming its intermediate determinations constitutes "relevant data" and that it was incumbent upon the FDIC to explain how this data can be harmonized with the final insurance determination. There is no question, however, that the FDIC *ultimately* concluded the deposit account records clearly and unambiguously indicated the Challenged Accounts were owned in the manner of "corporate accounts," per § 330.11. Having reached that conclusion, the FDIC's controlling regulations expressly prohibited it from considering any "other records on the manner in which the funds [were] owned." 12 C.F.R. § 330.5. Plaintiffs' extrinsic evidence was not, therefore, "relevant data" for purposes of the FDIC's final insurance determination. The absence of any discussion pertaining to this evidence in the FDIC's final determination is therefore unsurprising, and in no way arbitrary or capricious.[6]

---

[6] Plaintiffs also briefly contend the FDIC acted in an arbitrary and capricious manner by failing to include a certain email communication, in which Columbian allegedly indicates the Challenged Accounts constituted annuity contract accounts, in its

Continued . . .

## V.    Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

review of the deposit account records.  Plaintiffs raised this contention for the first time in their reply brief and the issue is therefore waived.  *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174-75 (10th Cir. 2005) (noting "the general rule that appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply [brief]." (alteration in original) (quotation omitted)).